UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**FAIR HOUSING CENTER OF WASHTENAW COUNTY, INC**.,
a Michigan non-profit corporation,
d/b/a The Fair Housing Center of Southeastern Michigan, Inc.

    Plaintiff,

v.

**PARKSIDE EAST, INC.**, a Michigan domestic corporation;
**HOLT MANOR, INC**., a Michigan domestic corporation,
**KELLY MANOR, INC**., a Michigan domestic corporation;
**SUDI HOPPER**, an individual

    Defendants.

Case No.: 15-11649

| | |
|---|---|
| Stephen M. Dane | Thomas Daniels (P29565) |
| Jia M. Cobb | Matthew Daniels (P75601) |
| RELMAN, DANE & COLFAX PLLC | PEAR SPERLING EGGAN & DANIELS, P.C. |
| 1225 19th Street, N.W., Suite 600 | 1349 S. Huron Street, Suite 1 |
| Washington, D.C. 20036 | Ypsilanti, MI 48197 |
| (202) 728-1888 | (734) 483-3626 |
| (202) 728-0848 (fax) | (734) 483-1107 (fax) |
| sdane@relmanlaw.com | tdaniels@psedlaw.com |
| jcobb@relmanlaw.com | mdaniels@psedlaw.com |

# COMPLAINT AND JURY DEMAND
# PRELIMINARY STATEMENT

1. Plaintiff Fair Housing Center of Washtenaw County, Inc. ("The Fair Housing Center of Southeastern Michigan" or "FHC")—an organization dedicated to ending discrimination in housing and public accommodations in Mid- and Southeastern Michigan—brings this action for declaratory judgment, injunctive relief, and damages against Defendants for discrimination on the basis of familial status in the provision of rental housing, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*.

2. Defendants, who own, operate, and/or manage multi-family housing complexes in Michigan, maintain and enforce a facially discriminatory policy prohibiting families with children from renting apartment units in their communities. Additionally, Defendants make discriminatory statements to prospective tenants regarding their refusal to rent to families with children, in violation of fair housing laws.

3. FHC opened an investigation of Defendants in 2014. FHC's investigation included initiating a series of controlled familial status tests to determine the nature and extent of Defendants' discriminatory conduct.

4. FHC conducted its testing in October of 2014 and January of 2015. The testing occurred at three apartment complexes owned, operated, and/or managed by Defendant Hopper through the corporate entities named as co-defendants: Parkside Apartments (in East Lansing, Michigan), Holt Manor Apartments (in Holt, Michigan), and Kelly Manor Apartments (in Owosso, Michigan).

5. FHC's testers posed as prospective tenants responding to Defendants' various advertisements for available one-bedroom apartment units. Some testers sought to rent one-

bedroom units with a spouse; other testers inquired about renting one-bedroom units for themselves and a small child. The testers had similar household incomes and other qualifications for renting.

6. FHC's testing confirmed that Defendants discriminate on the basis of familial status by refusing to rent apartment units to families with children and making unlawful discriminatory statements to prospective tenants. Prior to providing the testers with information about available apartment units, Defendants asked each tester whether the tester had any children. Uniformly, testers with children were told that children were not permitted to live in one-bedroom units. Defendants either abruptly terminated phone calls with the testers with children or represented that no other units were available for rent.

7. By contrast, married testers who confirmed that they did not have children were provided information about the apartment units, told that the units were available, and invited to view the apartments. In some cases, married testers were asked to confirm that they did not have children more than once during the telephone call. Accordingly, FHC's testing confirmed that Defendants allow two occupants to reside in a one-bedroom apartment, but not if one of the occupants is a child.

8. Defendants made discriminatory statements over the course of FHC's tests by confirming that Defendants do not allow children to live in one-bedroom units. Defendants told at least one tester that Defendants do not rent to young (twenty-year-old) residents and people with children because the community is quiet and largely comprised of older residents.

9. As a result of Defendants' blatantly discriminatory conduct, FHC has been required to divert scarce time, money, and other resources to investigating and counteracting Defendants' policies and practices. Furthermore, Defendants' unlawful conduct has frustrated FHC's mission

3

to end discrimination in housing and public accommodations and to promote accessible, integrated communities in Mid- and Southeastern Michigan.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 3613(a).

11. Venue is proper in the District Court for the Eastern District of Michigan under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and the parties reside in this District.

## PARTIES

12. Plaintiff Fair Housing Center of Washtenaw County, Inc. ("The Fair Housing Center of Southeastern Michigan" or "FHC") is a private, non-profit fair housing organization serving Mid- and Southeastern Michigan and incorporated in Michigan. Its principal place of business is located in Ann Arbor, Michigan.

13. FHC is a membership organization whose mission is to end discrimination in housing and public accommodations and to promote accessible, integrated communities. It serves Mid- and Southeastern Michigan, including Clinton, Eaton, Ingham, Jackson, Lenawee, Livingston, Monroe, and Washtenaw counties. FHC undertakes various activities to further its mission, including assisting in the investigation of unlawful housing discrimination, educating the public and housing advocates about fair housing rights and requirements, and providing education and outreach for housing consumers and housing advocates. FHC's programs are designed to protect the rights of persons to fair housing opportunities without discrimination on the basis of familial status and other protected characteristics.

14. FHC also investigates fair housing violations through its testing program. Testers are individuals who pose as prospective tenants for the purpose of obtaining information about the conduct of landlords, real estate companies, agents, or other housing providers to determine whether illegal housing discrimination is taking place. Testing occurs under controlled conditions to target and isolate potentially unlawful conduct.

15. Defendant Parkside East, Inc. is a domestic profit corporation incorporated in Michigan. Its registered agent address for service of process with the Michigan Department of Licensing and Regulatory Affairs is 4885 Franklin Road, Bloomfield Hills, Michigan. Upon information and belief, Parkside East, Inc. is the ownership entity of the Parkside Apartments, an apartment community located in East Lansing, Michigan.

16. Defendant Holt Manor, Inc. is a domestic profit corporation incorporated in Michigan. Its registered agent address for service of process with the Michigan Department of Licensing and Regulatory Affairs is 4885 Franklin Road, Bloomfield Hills, Michigan. Upon information and belief, Holt Manor, Inc. is the ownership entity of the Holt Manor Apartments, an apartment community located in Holt, Michigan.

17. Defendant Kelly Manor, Inc. is a domestic profit corporation incorporated in Michigan. Its registered agent address for service of process with the Michigan Department of Licensing and Regulatory Affairs is 4885 Franklin Road, Bloomfield Hills, Michigan. Upon information and belief, Kelly Manor, Inc. is the ownership entity of the Kelly Manor Apartments, an apartment community located in Owosso, Michigan.

18. Defendant Sudi Hopper owns, operates, and/or manages the Parkside Apartments, the Holt Manor Apartments, and the Kelly Manor Apartments, among other apartment complexes in Michigan, through the corporate co-defendants. Upon information and belief, Defendant Hopper

resides in Bloomfield Hills, Michigan. Defendant Hopper has responsibilities related to the creation, maintenance, and enforcement of the discriminatory policy and practices at issue. Defendant Hopper told each of FHC's testers that Defendants do not permit children to live in one-bedroom apartments, among other discriminatory statements.

19. In acting or omitting to act as alleged herein, each employee or officer of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by each Defendant as principal.

## FACTUAL ALLEGATIONS

20. In 2014, FHC opened an investigation of Defendant Hopper and properties affiliated with her. FHC's investigation included initiating a series of controlled tests to determine the nature and extent of Defendants' discriminatory conduct.

21. FHC conducted its testing in October of 2014 and January of 2015. The testing occurred at three apartment complexes owned, operated, and/or managed by Defendant Hopper: Parkside Apartments (in East Lansing, Michigan), Holt Manor Apartments (in Holt, Michigan), and Kelly Manor Apartments (in Owosso, Michigan).

22. FHC's testers posed as prospective tenants responding to Defendants' various advertisements for available one-bedroom apartment units. Some testers sought to rent one-bedroom units with a spouse; other testers inquired about renting one-bedroom units for themselves and a small child. The testers had similar household incomes and other qualifications for renting.

23. Upon information and belief, one-bedroom units at each of the tested properties are sufficiently large, and have enough habitable living space, to accommodate at least two

6

occupants under applicable state and/or local occupancy codes. Each tester spoke with Defendant Sudi Hopper, who owns and/or manages the properties.

24. FHC's testing confirmed that Defendants discriminate on the basis of familial status by refusing to rent apartment units to families with children. Defendants permit two occupants to reside in a one-bedroom apartment, but not if one of the occupants is a child.

25. Uniformly, Defendant Hopper told the testers seeking to rent an apartment for themselves and a child that children are not allowed to live in one-bedroom units. Testers without children who inquired about the availability of one-bedroom units for themselves and a spouse were asked to confirm that they did not have children, told that apartments were available, provided additional information about the units, and invited to view the apartments.

26. During FHC's testing of Defendants, Defendant Hopper repeatedly confirmed Defendants' facially discriminatory policy and made other discriminatory statements regarding Defendants' refusal to rent to young people and families with children.

27. For example, in October of 2014, two FHC testers contacted Defendants Parkside East Inc. and Sudi Hopper about renting a one-bedroom apartment at Parkside Apartments. FHC instructed one tester to represent that she was seeking a one-bedroom apartment for herself and a child; the other tester was instructed to inform Defendants that she wanted to rent a one-bedroom unit for herself and her husband. The testers called within hours of each other on the same day. Both testers spoke to Defendant Hopper.

28. Before providing either tester with any information about the apartment, Defendant Hopper (separately) asked each tester whether she had any "kids." Defendant Hopper told the tester with a child that children were not allowed to live in one-bedroom apartments and abruptly terminated the telephone call. The tester who told Defendant Hopper that she was looking for an

7

apartment for herself and her husband was provided information about the apartment—including that the rental community was quiet and did not have young (twenty-year-old) residents.

29. FHC's testing of Holt Manor Apartments in January 2015 produced the same results. Two testers separately contacted Defendants Holt Manor, Inc. and Sudi Hopper in response to a posted advertisement for a large, one-bedroom apartment unit. The testers called within days of each other. Both spoke directly to Defendant Sudi Hopper.

30. Defendant Hopper again asked each tester whether she had any children. The first tester told Defendant Hopper that she had a three-year-old child and that it would just be the two of them in the unit. Defendant Hopper told the tester that no children were allowed in one-bedroom apartments. Defendant Hopper abruptly terminated the call without providing any additional information to the tester.

31. When the married tester called about the unit at Holt Manor and confirmed that she did not have any children, Defendant Hopper replied, "okay, because we don't allow those in the one-bedroom." Defendant Hopper provided the married tester with information about the apartment and invited the tester to view the apartment. Defendants had repeated contacts with the married tester regarding the apartment unit.

32. FHC's testing of the Kelly Manor Apartments in late-January 2015 further confirmed Defendants' discrimination. In FHC's protected test of the Kelly Manor Apartments, the tester with a child asked Defendant Hopper if the unit was available. Instead of responding to the tester's question about the availability of the unit, Defendant Hopper asked the tester whether she had children. When the tester told Defendant Hopper that she had a child, Defendant Hopper told her that she could not have a child in a one-bedroom apartment unit and that no other properties were available.

33. Defendant Hopper also asked the married tester whether she had "kids." When the tester told Hopper that she did not have children, Hopper asked her age, whether she and her husband were "quiet people," and again asked the tester to confirm that she did not have any children. After the tester confirmed that she had no children, Defendant Hopper answered her questions about the apartment unit and invited her to view the apartment.

34. Before concluding the call, the married tester asked Defendant Hopper whether there was anything else she needed to know about the apartment unit. Making her discriminatory intent clear, Defendant Hopper responded "no, as long as you don't have children" because the rental community was "quiet" and comprised of "older" residents.

## INJURY TO PLAINTIFF

35. Plaintiff FHC has suffered injury in the form of diversion of its resources and frustration of its mission. By refusing to rent apartment units to families with children, Defendants have frustrated FHC's mission to end discrimination in housing and public accommodations and to promote accessible, integrated communities in Mid- and Southeastern Michigan.

36. FHC has made substantial efforts and expended considerable resources to ensure such equal housing opportunities in Mid- and Southeastern Michigan without regard to familial status, and Defendants' discriminatory practices have impeded its efforts.

37. As a result of Defendants' unlawful actions, FHC has been required to divert scarce time, money, and resources from its typical activities, which include providing a range of educational, counseling, and referral services in Mid- and Southeastern Michigan. Instead of engaging in these activities, FHC has had to identify and counteract Defendants' discriminatory practices by, among other activities: investigating Defendants' discrimination, coordinating and conducting testing of Defendants' properties, conducting research regarding Defendants and

related properties, and placing ads in local publications to educate the community about housing discrimination.

38. Defendants' conduct described above was willful, intentional, and knowing, and/or was implemented with callous and reckless disregard for Plaintiff's rights under the law.

### **FIRST CLAIM FOR RELIEF**

#### Federal Fair Housing Act

39. Plaintiff FHC re-alleges and incorporates by reference paragraphs 1-38, as if fully set forth herein.

40. Defendants injured Plaintiff FHC in violation of the FHA by committing the following discriminatory practices:

   a. Discriminating or otherwise making housing unavailable because of familial status, in violation of 42 U.S.C. § 3604(a);

   b. Discriminating in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of familial status, in violation of 42 U.S.C. § 3604(b); and

   c. Making, printing, or publishing, or causing to be made, printed, or published, a statement with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status, in violation of 42 U.S.C. § 3604(c).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FHC prays that the Court grants the following relief:

   a.   The Court should issue an order granting Plaintiff's request for declaratory relief, finding that the Defendants' actions violate the FHA.

  b. The Court should enter a judgment for compensatory damages to Plaintiff in an amount to be proved at trial before a jury that would fully compensate Plaintiff for the injuries alleged herein resulting from Defendants' unlawful discrimination.

  d. The Court should enter a judgment for punitive damages to Plaintiff, in an amount to be proved at trial before a jury, that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendants from engaging in similar conduct in the future.

  e. The Court should award Plaintiff its reasonable attorneys' fees and costs.

  f. The Court should grant such other relief as it deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

           Respectfully submitted,

           <u>Stephen M. Dane</u>
           Stephen M. Dane
           Jia M. Cobb
           RELMAN, DANE & COLFAX PLLC
           1225 19th Street, N.W., Suite 600
           Washington, D.C. 20036
           (202) 728-1888
           (202) 728-0848 (fax)
           sdane@relmanlaw.com
           jcobb@relmanlaw.com

           Thomas Daniels (P29565)
           Matthew Daniels (P75601)
           PEAR SPERLING EGGAN & DANIELS, P.C.
           1349 S. Huron Street, Suite 1
           Ypsilanti, MI 48197
           (734) 483-3626
           (734) 483-1107 (fax)
           tdaniels@psedlaw.com
Dated: May 7, 2015       mdaniels@psedlaw.com